UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
DIOMEDES ALCANTARA,          x
                               x    05 Cv. 5567 (SWK)
          Petitioner     x    99 Cr. 805 (SWK)
                               x
     -against-          x
                               x    **OPINION AND ORDER**
UNITED STATES OF AMERICA,   x
                               x
          Respondent.    x
----------------------------------X

**SHIRLEY WOHL KRAM, U.S.D.J.**

This case comes before the Court on a motion for relief under 28 U.S.C. § 2255. The petitioner, Diomedes Alcantara ("Alcantara"), argues that the Court should re-sentence him because: (1) his trial counsel provided ineffective assistance, and (2) the Court's original sentence violated United States v. Booker, 543 U.S. 220 (2005). For the reasons that follow, the Court denies the petitioner's requests for relief in their entirety.

I.    **BACKGROUND**

On August 17, 1999, a grand jury sitting in the Southern District of New York returned a three-count indictment against Alcantara and his coconspirators (the "New York Indictment"). Count One of the New York Indictment charged Alcantara with engaging in a conspiracy to distribute, and possession with intent to distribute, cocaine, in violation of 21 U.S.C. § 846. At the time the New York Indictment issued, Alcantara was in

federal custody in Florida on five-year-old charges of conspiracy to import and distribute large quantities of marijuana, and bail jumping (the "Miami Indictments"). In connection with the Miami Indictments, Alcantara retained Arturo V. Hernandez ("Hernandez") to represent him. Alcantara did not initially retain counsel to represent him on the New York Indictment.

In early February 2000, Alcantara pleaded guilty to the charges set forth in the Miami Indictments. After an unfruitful application to transfer to the Southern District of New York his sentencing on the Miami Indictments, Alcantara was sentenced in the Southern District of Florida principally to 85 months' imprisonment. In the meantime, federal officials transported Alcantara to New York in March 2000 to answer the New York Indictment. There, Hernandez represented Alcantara at his arraignment and initial conference on March 29, 2000. Nevertheless, on April 10, 2000, Hernandez withdrew from representing Alcantara, see 99 Cr. 805 (SWK), Dkt. No. 41, who remained without counsel until James Neville, Esq. ("Neville") entered a notice of appearance on April 26, 2000, see 99 Cr. 805 (SWK), Dkt. No. 42.

In September 2000, Neville withdrew from representing Alcantara due to a conflict of interest. See 99 Cr. 805 (SWK), Dkt. No. 48. Alcantara then retained new counsel, Greg Cooper,

Esq. ("Cooper"). At or around that time, the Government offered Alcantara a plea agreement with a stipulated guidelines sentencing range of 188 to 210 months' imprisonment (the "Plea Offer"). Alcantara rejected the Plea Offer, opting instead on October 18, 2000, to plead guilty without the benefit of a cooperation agreement to Count One of the New York Indictment. At his plea allocution, Alcantara admitted that he was responsible for the transportation of approximately 125 kilograms of cocaine from New Orleans to New York, making him eligible for a sentence of 292 to 325 months' imprisonment.

Shortly after his allocution, Alcantara retained a fourth attorney, Howard Leader, Esq. ("Leader"). Leader unsuccessfully attempted to resuscitate the Plea Offer. Moreover, in a written submission to the Court dated April 4, 2002, Leader argued that the Court should impose a sentence in keeping with the Plea Offer. Alcantara's fifth trial counsel, Lawrence Ruggiero, Esq. ("Ruggiero") expatiated upon this argument in a written submission to the Court dated August 29, 2002. In that submission, Ruggiero contended that Alcantara should be sentenced to a term of imprisonment within the stipulated guidelines set forth by the Plea Offer, which Alcantara had rejected only because of the ineffectiveness of prior counsel. The Court rejected this argument, sentencing Alcantara on June 18, 2003, to a term of 292 months' imprisonment, to run

concurrently with his 85-month sentence on the Miami Indictments.

Thereafter, Alcantara filed a notice of appeal from his conviction and sentence on the New York Indictment. Ruggiero, who served as Alcantara's appellate counsel, submitted a brief pursuant to Anders v. California, 386 U.S. 738 (1967), contending that there existed no nonfrivolous issues for appeal. On June 14, 2004, the Second Circuit summarily affirmed Alcantara's conviction and sentence. On June 14, 2005, Alcantara filed the instant motion under 28 U.S.C. § 2255 to vacate his sentence on the New York Indictment.

## II.  DISCUSSION

Collateral relief under 28 U.S.C. § 2255 is available "for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (quoting Hill v. United States, 368 U.S. 424, 428 (1962)). Here, Alcantara claims that his trial counsel[1] was constitutionally ineffective in violation of his Sixth Amendment rights, inasmuch as counsel failed to represent him adequately in plea negotiations. In addition, Alcantara argues that his sentencing violated his Sixth Amendment rights as set forth in

---

[1] See infra note 3.

4

Booker, insofar as the Court found drug-quantity facts that were not determined by a jury or admitted by the defendant. In the sections that follow, the Court addresses these claims and finds them to be wholly without merit. Thus, the Court dismisses Alcantara's petition under 28 U.S.C. § 2255 and denies him a certificate of appealability.

**A. The Ineffectiveness Claims**

Although Alcantara did not raise his ineffectiveness claims on direct appeal, the Court will consider the merits of these claims on the instant petition for collateral review. See Massaro v. United States, 538 U.S. 500, 504 (2003) (holding that "an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal.").[2] To

---

[2] Despite the seemingly clear directive announced in Massaro, 538 U.S. at 504, the application of that directive to the case at hand is a matter of some difficulty. Massaro expressly contemplated that some ineffectiveness claims would continue to be addressed on direct appeal. Id. at 508. Where such claims are brought on direct appeal, they may not, absent a showing of cause and prejudice, be brought again in a collateral attack. Akwuba v. United States, Nos. 01 Cv. 3057 (SWK) (FM), 96 Cr. 1159 (SWK), 2007 WL 1789010, at *5 (S.D.N.Y. June 20, 2007) (citing Peoples v. United States, 403 F.3d 844, 848 (7th Cir. 2005)). Therefore, even post-Massaro, a defendant's decision to raise an ineffectiveness claim prior to his petition for collateral relief may operate to bar subsequent consideration of that claim.

Here, though Alcantara did not raise his ineffectiveness claims on direct appeal, his trial counsel raised nearly identical ineffectiveness claims at sentencing, in an effort to persuade the Court to sentence Alcantara to a term of

make out a claim for ineffective assistance of counsel, a defendant must show that: (1) his counsel's conduct fell below an objective standard of reasonableness under prevailing professional norms; and (2) his counsel's deficient performance was prejudicial. Strickland v. Washington, 466 U.S. 668, 688, 692 (1984). This "standard is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on [it]." Lindstadt v. Keane, 239 F.3d 191, 199 (2d Cir. 2001). Indeed, in reviewing a claim for ineffective assistance, courts generally "must indulge a strong presumption

---

imprisonment within the range contemplated by the Plea Offer. (Tr. 3-9, June 18, 2003; Ruggiero Sentencing Letter 1-7, Aug. 29, 2002; Leader Sentencing Letter 2-6, Apr. 4, 2002.) The Court denied Alcantara's request at sentencing, refusing to grant him the benefit of the Plea Offer, which he had rejected. (Tr. 10-12, June 18, 2003). Now--at a time several years removed from Alcantara's criminal prosecution--Alcantara has lodged a nearly identical request by Alcantara for the benefit of the Plea Offer. (See Pet. 13.) Under these circumstances, it is not clear that the policies informing Massaro--including, especially, the desirability of concentrating disputes over the effectiveness of counsel in the forum most acquainted with the quality of representation provided, see Massaro, 538 U.S. at 505-07--are advanced through the Court's further consideration of Alcantara's claims. The events surrounding Alcantara's ineffectiveness claims were fresher in the Court's mind at sentencing, when it first considered and rejected those claims. Moreover, Alcantara's claims were more lucidly presented by trial counsel, who were intimately involved in the sentencing process, than they have been by habeas counsel.

Nevertheless, because the Court finds once again that Alcantara's ineffectiveness claims are meritless, it avoids the thorny legal question of whether they are also procedurally barred post-Massaro.

that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.

In order to carry the hefty burden prescribed in Strickland and its progeny, a defendant must, inter alia, "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Id. at 690. Here, Alcantara alleges that his counsel's representation during the plea negotiation process was unreasonable on two fundamental grounds. First, Alcantara claims that Hernandez unreasonably delayed the resolution of the Miami Indictments and inexplicably failed to timely seek the consolidation of those indictments with the more serious New York Indictment. (Pet. 5-8, 11-13.) Alcantara posits that Hernandez engaged in dilatory tactics in an effort to enlarge his fee, and thus, that Hernandez labored under an actual conflict of interest. (Pet. 10.) Alcantara further argues that Hernandez's tardy resolution of the Miami Indictments and belated attempt to consolidate them with the New York Indictment prevented him from securing an advantageous plea deal because, by the time he arrived in New York, the information he possessed was largely stale. (Pet. 6, 10.) Second, Alcantara alleges that his counsel obstructed his desire to accept the Plea Offer, which would have significantly reduced

the Guidelines range applicable to his offense.[3] (Pet. 5-6, 9, 13.)

For the reasons that follow, the Court finds that Alcantara has failed to show professionally unreasonable conduct either in Hernandez's alleged delays or in his counsel's purported obstruction of his acceptance of the Plea Offer. Moreover, the Court holds that Alcantara's counsel did not perform in a professionally unreasonable manner on the totality of the record before it. Thus, the Court determines that Alcantara has failed to satisfy the first prong of the Strickland test, and dismisses his ineffectiveness claims accordingly.

The Sixth Amendment right to the effective assistance of counsel undoubtedly extends to plea negotiations. United States v. Gordon, 156 F.3d 376, 379-80 (2d Cir. 1998). Claims of ineffective assistance in the plea-bargaining process are evaluated under the Strickland standard. See Boria v. Keane, 99

---

[3] The Petition faults Hernandez for Alcantara's failure to accept the Plea Offer. (Pet. 5-6, 9, 13.) However, Hernandez withdrew from representing Alcantara on April 10, 2000. See 99 Cr. 805 (SWK), Dkt. No. 41. Although the record is not pellucidly clear, it appears that Cooper was Alcantara's attorney at the time the Plea Offer was tendered. (Ruggiero Sentencing Letter 4, Aug. 29, 2002.) Thus, the Court construes Alcantara's criticism of Hernandez's conduct with regard to the Plea Offer as one levied generally against his counsel at the time. The Court has sought and acquired an affidavit from Cooper concerning the circumstances surrounding Alcantara's eventual entry of a guilty plea without the benefit of a plea bargain. See 99 Cr. 805 (SWK), Dkt. No. 159 (order directing Cooper to provide relevant information concerning his representation of Alcantara).

F.3d 492, 496-97 (2d Cir. 1996) (applying Strickland to evaluate professional reasonableness of counsel's conduct with respect to tendered plea offer). Accordingly, counsel enjoys a strong presumption that his conduct in the pursuit of plea negotiations was professionally reasonable. See Purdy v. United States, 208 F.3d 41, 45 (2d Cir. 2000) (citing Strickland, 466 U.S. at 689, 693). Moreover, courts must not permit "the distorting effects of hindsight" to overcome this presumption of reasonableness, nor may they second guess reasonably justifiable trial strategy. Strickland, 466 U.S. at 689.

If a plea offer is tendered by the Government in a criminal case, it is well established that defense counsel "must always communicate to the defendant the terms of [that offer]." Cullen v. United States, 194 F.3d 401, 404 (2d Cir. 1999). Moreover, defense counsel "has the duty to advise his client fully on whether a particular plea to a charge appears to be desirable." Boria, 99 F.3d at 496 (internal quotation marks, citation, and emphasis omitted). Thus, failure either to inform the defendant of the terms of a plea bargain, or to provide any advice on the desirability of accepting that bargain, constitutes deficient performance under the Sixth Amendment. Cullen, 194 F.3d at 404 (failure to communicate offer); Boria, 99 F.3d at 496, 498 (failure to provide any advice regarding acceptance of offer). Nevertheless, the decision whether to accept a plea bargain

ultimately rests with the defendant, and counsel must be careful not to coerce the defendant into accepting or rejecting a plea offer. Purdy, 208 F.3d at 45. Moreover, although defense counsel "should usually inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed," id. (citing Gordon, 156 F.3d at 380, there is no per se rule requiring that counsel advise the defendant either to accept a plea offer or reject it, id. at 46.

After considering the record before it and the applicable legal principles, the Court holds that Alcantara has failed to show that Hernandez's alleged dilatory tactics were the result of anything other than sound trial strategy. In a sworn affidavit, Hernandez has stated that his client initially instructed him to prepare for trial on the Miami Indictments. (Gov't Opp'n, Ex. A ¶ 6.) According to Hernandez, Alcantara made the decision to proceed to trial after Hernandez had explained "all of his legal options, including pleading with cooperation." (Gov't Opp'n, Ex. A ¶ 7.) Hernandez further asseverates that this decision was grounded in Alcantara's perception that the Government's evidence had grown stale during the five years that he was a fugitive and Alcantara's concerns over the "potential impact of his cooperation on close family members." (Gov't Opp'n, Ex. A, ¶ 7.) Hernandez has recounted the efforts he made

to prepare for trial on the Miami Indictments, which was initially scheduled for October 1999, and was postponed several times to dates in December 1999, January 2000, and finally, early February 2000. (Gov't Opp'n, Ex. A ¶¶ 6-9, 12.)

Hernandez asserts that just one week before the scheduled commencement of trial on the Miami Indictments in late January, Alcantara determined that he wanted to pursue plea negotiations on his pending cases. (Gov't Opp'n, Ex. A ¶ 11.) Hernandez affirms that he then sought to negotiate a plea agreement on Alcantara's behalf, but was unable to do so, due in part to significant time constraints. (Gov't Opp'n, Ex. A ¶ 12.) As the final trial date approached, Hernandez asserts that he advised his client to proceed to trial, given potential weaknesses in the Government's case, as well as Alcantara's failure to secure a cooperation agreement. (Gov't Opp'n, Ex. A ¶ 12.) Nevertheless, on February 2, 2000, Alcantara elected to plead guilty to the Miami Indictments without the benefit of a plea agreement. (Gov't Opp'n, Ex. A ¶ 12.) Hernandez's affidavit also details the efforts he made to secure the consolidation of the Miami Indictments with the New York Indictment, both in the week leading up to Alcantara's eventual decision to plead guilty to the Miami Indictments, and in the months following that guilty plea. (Gov't Opp'n, Ex. A ¶¶ 12-13, 17-18.) After failing to obtain the consolidation of the Miami and New York Indictments,

Hernandez affirms that he represented Alcantara in a contested sentencing hearing on the Miami Indictments, and secured a two-level safety valve reduction and a finding of a lesser amount of contraband than that proposed by the Government. (Gov't Opp'n, Ex. A ¶ 22.)

Alcantara has introduced little to contradict Hernandez's account of the resolution of the Miami Indictments. Indeed, much of the evidence Alcantara cites in this respect tends to reinforce Hernandez's narrative. In an affirmation originally submitted to the Court at the time of Alcantara's sentencing on the New York Indictment, Ruggiero, who served as Alcantara's fifth attorney, asserts that Hernandez stated that he had advised Alcantara to go to trial on the Miami Indictments because Hernandez believed he could obtain an acquittal, due in large part to the expected unavailability of a key Government witness. (Pet., Ruggiero Affirmation ("Ruggiero Aff.") ¶ 2.) Although Ruggiero also states that Hernandez had no basis for believing that he could obtain an acquittal on the Miami bail-jumping charge (Pet., Ruggiero Aff. ¶ 3), Ruggiero's affirmation does not in any way contradict Hernandez's sworn statement that Alcantara made the decision to proceed to trial on the Miami Indictments after having been informed of all of his legal options, including the possibility of cooperating (Gov't Opp'n, Ex. A ¶ 7). In addition to the Ruggiero affirmation, Alcantara

has advanced conclusory allegations concerning Hernandez's alleged financial motive to prolong the proceedings in Miami. (Pet. 8, 10; Tr. 9, June 18, 2003.) Because the Court finds Hernandez's detailed narrative plausible and far more credible than these conclusory allegations, it will credit Hernandez's basic description of the events surrounding the resolution of the Miami Indictments, without the need for a testimonial hearing.[4] See Rosario-Dominguez v. United States, 353 F. Supp. 2d 500, 520 (S.D.N.Y. 2005) (citing Chang v. United States, 250 F.3d 79, 86 (2d Cir. 2001)).

Far from being professionally unreasonable, Hernandez's conduct, as described in his affidavit, "successfully steered a course between the Scylla of inadequate advice and the Charybdis of coercing a plea," Purdy, 208 F.3d at 45. In particular, Hernandez informed Alcantara of all of his legal options, including cooperation, vis-à-vis the Miami Indictments. After informing Alcantara of his options, Hernandez respected his client's initial decision to proceed to trial. Moreover, once his client had determined to plead guilty, Hernandez made efforts to secure a plea bargain, and to consolidate the Miami

---

[4] Given that the Court credits Hernandez's account, it necessarily rejects Alcantara's allegation that Hernandez prolonged the resolution of the Miami Indictments in order to enlarge his fee. In the absence of any evidence that Hernandez acted to maximize his earnings, the Court additionally rejects Alcantara's contention that Hernandez labored under a conflict of interest borne of his desire for an augmented fee (Pet. 10).

Indictments with the New York Indictment. Although Alcantara states that these efforts at consolidation were made only at the "eleventh-hour" (Pet. 12), in fact they were made at the earliest possible moment, given Alcantara's last-minute decision to plead guilty on the Miami Indictments. Moreover, the record reveals that Hernandez had reason to believe that Alcantara would prevail on the Miami drug charges, if not on the bail-jumping charges, due to potential weaknesses in the Government's case. (Gov't Opp'n, Ex. A ¶¶ 7, 12.) Under these circumstances, there may have been good reason to keep a winning case in the Miami Indictments separated from a possible losing case in the New York Indictment. In any event, given that Alcantara made an informed decision to proceed to trial on the Miami Indictments, and because there was at least some reason to believe that Alcantara could prevail at that trial, Hernandez did not perform in a professionally deficient manner in postponing attempts to consolidate the Miami Indictments with the New York Indictment.

Likewise, the Court detects no ineffective representation in connection with the Plea Offer the Government extended to Alcantara on the New York Indictment. Alcantara faults his counsel[5] for failing "to finalize the proposed plea agreement and ensure that Mr. Alcantara received the benefits of cooperating with prosecutors in New York." (Pet. 6.) On the record before

---

[5] See supra note 3.

the Court, however, it appears that Alcantara rejected the Plea Offer because he hoped to obtain a better deal. In a sworn affidavit, Cooper has indicated that Alcantara entertained doubts about the Plea Offer "because [it] was 'too much time.'" (Cooper Aff. ¶ 3, July 18, 2007.) Moreover, Cooper has affirmed that it was Alcantara's "decision to take the plea" without the benefit of an agreement (Cooper Aff. ¶ 4, July 18, 2007), and that "[i]t has never been [his] practice to force a client to take a plea" (Cooper Aff. ¶ 5, July 18, 2007). Cooper's recollection is supported by the transcript of Alcantara's plea allocution, during which the Court specifically addressed the absence of a plea agreement (Tr. 13, Oct. 18, 2000), and Alcantara stated that he was pleading voluntarily, even in light of complications involving his prior counsel (Tr. 16-17, Oct. 18, 2000). Furthermore, in his sentencing letter, Ruggiero stated that "Cooper advised Alcantara that he [could] turn down the [Plea Offer], enter a guilty plea without an agreement, and continue to negotiate for an agreement with a lower stipulated guideline range. . . . Tragically, Alcantara <u>chose</u> [that] 'option.'" (Ruggiero Sentencing Letter 4, August 29, 2002 (emphasis added).)

Of course, Alcantara never obtained a better deal than that embodied by the Plea Offer. Both Ruggiero and Leader attributed Alcantara's failure to achieve a better bargain in part to the

staleness of his information, which resulted from the alleged delays in Hernandez's resolution of the Miami Indictments. (Ruggiero Sentencing Letter 5, Aug. 29, 2002; Leader Sentencing Letter 4-5, Apr. 4, 2002.) Alcantara repeats this theme in his petition for relief. (Pet. 6.) Although Alcantara's information ultimately may have proved stale, that fact was not obviously apparent at the time Alcantara rejected the Plea Offer. Indeed, in the months following Alcantara's rejection of the Plea Offer, law enforcement officers maintained contacts with Alcantara and, at Alcantara's direction, established extensive contacts with his brother. (Ruggiero Sentencing Letter 5 & n.5, Aug. 29, 2002; Leader Sentencing Letter 4-5, Apr. 4, 2002.) Thus, at the time Alcantara rejected the Plea Offer, it was not unreasonable to surmise that he could communicate his good intentions by entering a guilty plea, while also securing a more advantageous agreement through further cooperation. That Cooper may have presented this reasonable, though failed, strategy as an option, and that Alcantara adopted it, provides no ground for finding that Cooper's conduct fell below an objective standard of reasonableness. See Strickland, 466 U.S. at 689 (ineffectiveness claims should not be evaluated through "distorting" lens of hindsight).

Given Cooper's sworn affidavit, as well as the other evidence on the record, it appears that counsel informed

Alcantara of his available options and left to him the ultimate decision regarding the proper plea. Under the circumstances of this case, that is all the Sixth Amendment required of counsel. See Purdy, 208 F.3d at 46. Absent evidence suggesting that counsel forced Alcantara to reject the Plea Offer, or evidence demonstrating that counsel misled Alcantara about the consequences of rejecting the Plea Offer, responsibility for Alcantara's decision must rest squarely on his shoulders. He took a fully-informed, calculated risk, which failed to produce the results he had hoped for, and he cannot now ask the Court to protect him from the adverse consequences of that gamble.

Therefore, the Court concludes that the conduct of Alcantara's counsel did not fall below an objective standard of reasonableness, either with respect to the alleged delays in the resolution of the Miami Indictments, or with respect to the alleged obstruction of Alcantara's desire to accept the Plea Offer. Moreover, considering the totality of the record before it, the Court cannot hold that counsel performed in a constitutionally deficient manner in representing Alcantara in plea negotiations on the New York Indictment. In this respect, one additional matter that Alcantara failed to address in his petition deserves some attention.

In submissions made to the Court at the time of Alcantara's sentencing, Ruggiero and Leader contended that Hernandez had

abdicated his responsibilities by failing to attend certain Government proffer sessions involving Alcantara. (Ruggiero Sentencing Letter 3-4, Aug. 29, 2002; Leader Sentencing Letter 3-4, Apr. 4, 2002.) Ruggiero reiterated this argument at Alcantara's sentencing hearing. (Tr. 8-9, June 18, 2003.) The record suggests that Alcantara may have participated in three proffer sessions before his guilty plea (Tr. 8, June 18, 2003), and that Hernandez attended at least one of these sessions (Gov't Opp'n, Ex. A ¶ 18).[6] Because Alcantara fails to mention Hernandez's absence from proffer sessions in his petition, he arguably waived any claim arising therefrom. See, e.g., Strickland, 466 U.S. at 490 (petitioner alleging ineffective assistance must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable

---

[6] In their sentencing submissions to the Court, Ruggiero and Leader faulted Hernandez for failing to attend proffer sessions allegedly held on March 16 and March 29, 2000. (Ruggiero Sentencing Letter 3-4, Aug. 29, 2002; Leader Sentencing Letter 3-4, Apr. 4, 2002.) Prior to the March 16 proffer session, Hernandez had repeatedly instructed Alcantara to retain New York counsel (Gov't Opp'n, Ex. A ¶¶ 5, 10, 16-20), and at the time of the March 16 proffer session, Hernandez was still not the counsel of record on the New York Indictment, see 99 Cr. 805 (SWK), Dkt. No. 38 (Hernandez's notice of appearance, filed on March 21, 2000). Moreover, it appears that Hernandez actually attended the proffer session on March 29. (Gov't Opp'n, Ex. A ¶¶ 17-18.) Thus, the specific allegations advanced by Ruggiero and Leader may not deserve full credence. Nonetheless, for purposes of addressing Hernandez's alleged non-attendance at proffer sessions, the Court will assume that Hernandez was absent from at least some of these sessions (Gov't Opp'n, Ex. A. ¶ 18).

professional judgment").[7] Nevertheless, as this issue relates to Alcantara's claims regarding the representation he received during plea negotiations, the Court will address it.

In United States v. Ming He, the Second Circuit held that "cooperating witnesses are entitled to have counsel present at debriefings, unless they explicitly waive such assistance." 94 F.3d 782, 793 (2d Cir. 1996). In so holding, the Second Circuit refused to ground its decision in the Sixth Amendment, id. at 793, though it made plain that the policies underlying that provision informed its determination, id. at 789-93. Although Alcantara has procedurally defaulted on any claim that the Government directly violated his rights under Ming He because he failed to raise that issue on direct appeal, see United States v. Jones, 96 Cr. 259, 1999 WL 569536, at *5 (E.D. La. Aug. 3, 1999),[8] Hernandez's non-attendance at proffer sessions may be

---

[7] As Alcantara is represented by counsel, his papers are not entitled to the same "liberal construction" that applies to submissions made by pro se petitioners. See Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001) (instructing courts to construe papers filed by pro se petitioner "to raise the strongest arguments that they suggest").

[8] A defendant's claim that his right to have counsel present during debriefings was violated, as distinct from a claim for ineffective assistance of counsel, is subject to traditional procedural default rules. Jones, 1999 WL 569536, at *5. Under such rules, a defendant who fails to raise a claim on direct review may raise that claim in habeas "only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent." United States v. Bousley, 523 U.S. 614, 622 (1998) (internal quotation marks and citations omitted). Here, Alcantara did not claim on appeal that the Government had

construed as further support for Alcantara's ineffectiveness claims. Even when so construed, however, Alcantara has failed to allege that his counsel performed in a constitutionally deficient manner.

"A defendant is not required to invite counsel to accompany him to a debriefing session . . . . In short, defense counsel's assistance is waivable." Ming He, 94 F.3d at 793. Absent factual allegations showing that counsel's presence was required in order to ensure the basic fairness or effective execution of a proffer session, see, e.g., United States v. Jones, 96 Cr. 259,

---

prevented Hernandez from attending proffer sessions in violation of Ming He. (See generally Pet., Ruggiero Anders Brief.) Indeed, Alcantara has not specifically advanced that claim in the petition under review. Moreover, Alcantara has not offered any purported cause for his failure to argue Ming He on appeal, nor has he advanced any purported showing of prejudice arising therefrom. Alcantara has also declined to show that he is actually innocent. Therefore, Alcantara is procedurally barred from arguing that the Government violated his rights under Ming He by preventing Hernandez from attending proffer sessions. Jones, 1999 WL 569536, at *5.

In addition, it is not clear under what circumstances, if any, a defendant may assert in a petition under 28 U.S.C. § 2255 rights created as an exercise of an appellate court's supervisory authority. See United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (collateral relief is available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice'") (quoting Hill v. United States, 368 U.S. 424, 428 (1962)). Although Ming He cited constitutional considerations, 94 F.3d at 789-93, the decision ultimately rested upon the Second Circuit's supervisory powers, id. at 793. Thus, it is not immediately apparent that Alcantara could successfully argue Ming He at this stage of the proceedings, even if his claim were not procedurally barred.

2001 WL 127300, at * 11 (E.D. La. Feb. 9, 2001) (holding that defense counsel was ineffective for failing to appear at debriefing because of "unusual plea agreement" that required striking of "delicate balance" at debriefing session), counsel's performance is not per se deficient simply because counsel, with his client's consent, fails to attend a proffer session, see, e.g., Allen v. United States, 14 Fed. Appx. 341, 342-43 (6th Cir. 2001) (finding no ineffectiveness where defendant consented to counsel's absence from debriefings), cert. denied, 534 U.S. 1153 (2002); United States v. Shah, 263 F. Supp. 2d 10, 24-25 (D.D.C. 2003) (same); Bearse v. United States, 176 F. Supp. 2d 67, 76 (D. Mass. 2001) (same); Schneider v. United States, 838 F. Supp. 709, 715 (E.D.N.Y. 1993). Here, in a sworn affidavit submitted to the Court, Hernandez asserted that

> [t]he government's counsel made clear that she had not decided whether to offer Mr. Alcantara a cooperation plea agreement and that she had to "proffer" him first. The first of these debriefings occurred while the undersigned counsel was in New York, and were accordingly initially attended; (counsel was not able to stay for the entire debriefing due to conflicts with travel plans) however, the subsequent debriefings scheduled after the undersigned counsel's departure to Miami were not attended. The decision to proceed without counsel was made by Mr. Alcantara . . . .

(Gov't Opp'n, Ex. A ¶ 18.) Alcantara has not made any allegations, or presented any evidence, contradicting this account of Hernandez's absence from some of his debriefings. Thus, Alcantara waived his right to have Hernandez present at

those debriefings Hernandez did not attend. Because Alcantara has failed to allege any facts tending to show that Hernandez's presence was required in order to ensure the basic fairness or effective execution of these proffer sessions, Alcantara has not shown that Hernandez's conduct fell below an objective standard of reasonableness.

In light of the foregoing considerations and the totality of the record before it, the Court finds that Alcantara's counsel did not perform in a constitutionally deficient manner. Moreover, there is no need for a testimonial hearing on this issue because the Court is convinced, on the basis of the trial record as supplemented by affidavits from counsel, that such a hearing would offer no "reasonable chance of altering its view of the facts," Chang v. United States, 250 F.3d 79, 86 (2d Cir. 2001). Because Alcantara has failed to demonstrate that his counsel performed deficiently, his claims for ineffective assistance of counsel must be dismissed.[9]

_____

[9] Even if the Court were persuaded that counsel performed deficiently, Alcantara has nevertheless failed to demonstrate the ineffectiveness of his counsel because he has not shown prejudice. In particular, Alcantara has failed to allege facts tending to show that he possessed information whose disclosure to the Government could have resulted in a favorable cooperation agreement. Moreover, Alcantara has failed to show that he would have accepted the Plea Offer if not for his counsel's conduct. Indeed, as the Court explained above, the record shows that Alcantara chose to reject the Plea Offer in the hopes that he could achieve something better. Furthermore, Alcantara has not advanced facts showing that his proffer sessions would have

**B. The _Booker_ Claim**

Alcantara contends that his sentencing violated the Supreme Court's holding in _Booker_ because it was predicated upon the Court's finding that he possessed 150 kilograms of cocaine and played a significant role in the charged offense. (Pet. 13.) According to Alcantara, the Court was not entitled to consider these facts, which were neither found by a jury, nor admitted by Alcantara. (Pet. 13-14.)

The Second Circuit has held that _Booker_ "does not apply to cases on collateral review where the defendant's conviction was final as of January 12, 2005, the date that _Booker_ issued." _Guzman v. United States_, 404 F.3d 139, 144 (2d Cir. 2005), _cert denied_, 546 U.S. 1035 (2005). Here, the Second Circuit summarily affirmed Alcantara's conviction on June 14, 2004. Because Alcantara did not file a petition for a writ of certiorari, his conviction became final when the time for filing such a petition

---

produced better results had Hernandez attended all of them. _See, e.g._, _Duncan v. United States_, 05 Cv. 699, 2005 WL 3051005, at * 4 (W.D. Mich. Nov. 15, 2005) (no prejudice where petitioner "fail[ed] to explain how her proffer would have been different if her counsel had attended"); _Shah_, 263 F. Supp. 2d at 25 (no prejudice because defendant had already decided to turn "state's evidence" and plead guilty); _Bearse_, 176 F. Supp. 2d at 76 (no prejudice where "[t]here [was] no showing that counsel's presence at debriefings would have affected the government's position on § 5K1.1"). Alcantara has acknowledged that whatever information he possessed was stale by the time he arrived in New York. (Pet. 10.) Absent some reason to conclude that he ever possessed information that could have secured a plea bargain, there are no grounds for finding that he was prejudiced by his counsel's conduct.

expired, i.e., September 12, 2004. See Clay v. United States, 537 U.S. 522, 532 (2003) (conviction of criminal defendant who fails to file petition for writ of certiorari becomes final for purposes of one-year statute of limitations under § 2255 when time for filing petition for writ expires); U.S. Sup. Ct. R. 13.1 (petition for writ of certiorari must be filed within 90 days of entry of judgment by Court of Appeals). Thus, Alcantara's conviction was final before Booker issued, and Alcantara's Booker claim must be denied.

## III.  CONCLUSION

In light of the foregoing considerations, Alcantara's claims are meritless. Thus, his petition for relief under § 2255 is dismissed. Moreover, because reasonable jurists would not find "debatable or wrong" the Court's resolution of the constitutional issues presented in Alcantara's petition, the Court will not issue a certificate of appealability. Slack v. McDaniel, 529 U.S. 473, 484 (2000); see also 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.").

SO ORDERED.

_____
SHIRLEY WOHL KRAM
UNITED STATES DISTRICT JUDGE


Dated:    New York, New York
          April 9, 2008

SO ORDERED.

SHIRLEY WOHL KRAM
UNITED STATES DISTRICT JUDGE

Dated:     New York, New York
           April 9, 2008

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED

DATE FILED 4/9/08